```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ATLANTIS INFORMATION TECHNOLOGY, GmbH,

                Plaintiff,
                                        MEMORANDUM & ORDER
        -against-                       06-CV-3921 (JS)(WDW)

CA, INC.,

                Defendant.

----------------------------------------X
APPEARANCES:
For Plaintiff:      J. Christopher Jensen, Esq.
                    Ronald W. Meister, Esq.
                    Eric Joseph Shimanoff, Esq.
                    Jonathan Z. King, Esq.
                    Cowan, Liebowitz & Latman, P.C.
                    1133 Avenue of the Americas
                    New York, NY 10036-6799

For Defendant:      John P. McEntee, Esq.
                    Norma B. Levy, Esq.
                    Patrick Collins, Esq.
                    Farrell Fritz, P.C.
                    1320 RexCorp Plaza
                    Uniondale, NY 11556-0120

                    Michael D. Schissel, Esq.
                    Pamela Addison Miller, Esq.
                    Arnold & Porter LLP
                    399 Park Avenue
                    New York, NY 10020-4690

                    Adam T. Bernstein, Esq.
                    CA, Inc.
                    1 CA Plaza
                    Islandia, NY 11749
```

## INTRODUCTION

On August 14, 2006, Atlantis Information Technology, GmbH ("Plaintiff" or "Atlantis") filed a Complaint, and on August 21, 2006, filed an Amended Complaint against CA, Inc. ("Defendant" or "CA") alleging that CA wrongfully withheld at least $83 million in

royalties under a software licensing agreement between the parties. Currently pending before the Court is Defendant's motion for leave to file an amended answer asserting an additional affirmative defense and counterclaim.

## BACKGROUND

Atlantis is a corporation organized under the laws of the Federal Republic of Germany that develops, licenses, maintains, and supports software products. In particular, it owns copyrights and trademarks for a software product called "E/NAT." Defendant, a Delaware corporation with its principal place of business in New York, licenses software products such as E/NAT and distributes them to its customers. Defendant is one of the world's largest providers of management software.

On February 28, 1997, Plaintiff and Defendant entered into a Software License Agreement ("SLA"). Pursuant to the SLA, Plaintiff granted Defendant the license to use, market, distribute, and sublicense the E/NAT product throughout the world. (Decl. of Pamela Miller, Ex. 2 at 2, Docket Entry #66). In return, the Defendant agreed to pay Plaintiff substantial license and maintenance fees ("Royalties"). The SLA further required the Defendant to pay Plaintiff 40% of the licensing revenues and 50% of the maintenance fees it received. Id. at 11. In addition, the SLA provided that if the Defendant sold or licensed E/NAT together with its own software—a practice known as "bundling"—it was required to

pay royalties based on a pro-rata share of the sale attributable to the E/NAT product. Id. Also pursuant the SLA, the Defendant was permitted to provide its customers a "test" installation of E/NAT on a trial basis for 120 days without paying any royalties to Plaintiff. After the expiration of the 120 day "test" period, Defendant was contractually obligated to identify the customer provided with the E/NAT product and pay the requisite royalties to Plaintiff. Plaintiff, on the other hand, was required to "continuously enhance and update" the E/NAT product.[1] Id. at 3.

Also under the SLA, Defendant was required to maintain complete and accurate records regarding its E/NAT licensing activities and provide Plaintiff with the right to audit such records. Id. at 6-7. Plaintiff claims that it trusted and relied on Defendant to provide accurate and truthful reports because the licensing information was solely in Defendant's possession and control. (Pl.'s Am. Compl. ¶ 21, Docket Entry #2). If an audit revealed that Defendant had understated its royalty obligations to Plaintiff by more than ten percent, Defendant was required to pay for all costs associated with the audit. Id. ¶ 22. The Plaintiff also maintains that it "placed a special trust and confidence" in Defendant throughout their contractual relationship, and that as a result of this trust, Defendant owed Plaintiff a fiduciary duty to

---

[1] The upgrade and enhancement of the E/NAT product is precisely the basis of Defendant's motion pending before this Court.

truthfully disclose all licensing activities and pay all royalties specified under the SLA. Id. ¶¶ 23-24.

Initially, both parties interpreted the SLA differently, and subsequently resolved these differences by entering into a number of side agreements and by amending the SLA on various occasions. Id. ¶ 25. For example, after a dispute over certain royalties regarding "shelf licenses," the parties executed a letter agreement dated December 8, 1997, wherein Defendant agreed to pay Plaintiff an annual royalty fee of $100,000. Id. ¶ 26. Thereafter, the parties again modified the SLA, recalculating the royalties formula and requiring the Defendant to report both the type of machine for which the E/NAT product was licensed and the length of the license term. In particular, the modified agreement required Defendant to pay (1) an initial license fee of thirty-four percent of the list price for licensing and maintenance and (2) fifty percent of the aggregate maintenance renewal revenues collected by Defendant. Id. ¶ 28.

Plaintiff claims that Defendant failed to pay the requisite royalties as per the SLA. Plaintiff further contends that in January 2004, it was "shocked to learn" that Defendant had been submitting false and incomplete reports, thereby concealing the true extent of its royalty obligations to Plaintiff. Id. ¶ 33. It also claims that Defendant failed to completely report licensing activities for some customers and purposefully "under-reported" the

4

number of machines on which its customers were permitted to install the E/NAT product. Id. ¶ 34. Subsequent to these findings, the parties entered into a settlement agreement ("Settlement") and a third amendment to the SLA ("Third Amendment") in December 2004. Pursuant to the settlement, Defendant agreed to pay Plaintiff a sum of money, and, pursuant to the third amendment, Defendant was again required to pay license and maintenance fees of thirty-four percent of the list price regardless of the sublicensing revenues it received. Id. ¶¶ 37-38.

Atlantis further alleges that CA provided a royalty report in January 2005 which "utterly failed to provide the information required by the [t]hird [a]mendment." Id. ¶ 46. Specifically, Atlantis maintains that these reports revealed both a considerable number of unreported and under-reported customers of CA for which royalties had not been paid. Id. ¶ 47. As a result of these findings, Plaintiff demanded an audit of Defendant's licensing activities in early 2006, which ultimately revealed numerous problems with the royalty payments and contractual violations of the SLA, the settlement, and amendments. Id. ¶ 51.

In its Amended Complaint, Plaintiff alleges that Defendant (1) breached the SLA, (2) violated the implied covenant of good faith and fair dealing, (3) breached its fiduciary duty, (4) fraudulently concealed information, (5) infringed on the Plaintiff's copyright, and (6) was unjustly enriched. Defendant

5

moved to dismiss various counts of the Amended Complaint on October 10, 2006. On April 30, 2007, the Court issued a Memorandum of Decision and Order granting Defendant's motion to dismiss all claims in the Amended Complaint except for the breach of contract, which remains pending before this Court. On May 14, 2007, Defendant filed an Answer to the Amended Complaint denying all material allegations and asserting four affirmative defenses.

On May 12, 2008, the Court entered a Stipulation and Order allowing the undersigned counsel to appear as substitute counsel on behalf of Defendant. Between May and September of 2008, the parties engaged in limited discovery.[2] On September 20, 2008, the parties appeared before Magistrate Judge Wall to set a schedule for the completion of discovery.[3] At that conference, Defendant's new counsel[4] raised the possibility of filing a motion to amend the

---

[2] Worth mentioning in this Order are CA's first discovery requests in August 2007, one of which was an interrogatory focused on the subject of this motion. The interrogatory focused on Atlantis' alleged failure to provide enhancements and updates to the E/NAT product. (See Decl. of J. Christopher Jensen, Esq. in Opp'n to CA's Mot. to Amend, Ex. D at 5, Docket Entry #68.)

[3] The scheduling order issued by Judge Wall set December 31, 2007 as the deadline for the parties to seek any amendment to their pleadings. (See id., Ex. C at 1-2.) On September 12, 2008, the parties consented to a second amended scheduling order which set forth deadlines for completion of fact discovery, service of expert reports, and expert discovery, and left intact the long-expired deadline to seek leave to amend. (See id., Ex. I at 1-2.)

[4] CA terminated its prior counsel in April 2008 and subsequently substituted present counsel to represent it in the litigation against Atlantis.

6

answer to include an additional affirmative defense and counterclaim. Counsel for Plaintiff indicated that it would oppose such a motion.

On January 24, 2008, CA took the deposition of Alexander Gaugler ("Gaugler"), Managing Director of Atlantis. Gaugler testified for the first time that Atlantis' efforts to enhance and update the E/NAT, as required by the SLA, were halted since 2002 or 2003. See Decl. of Pamela Miller, Ex. 11, Docket Entry #66. In other words, Gaugler's testimony established that Atlantis had not fulfilled its contractual obligations because it believed CA had breached the SLA, not due to delays in development, as Atlantis had previously claimed.[5]

On October 20, 2008, approximately nine months after Gaugler's deposition, Defendant filed a memorandum in support of its motion for leave to file an Amended Answer asserting an additional affirmative defense of nonperformance and a counterclaim for breach of contract against Plaintiff. Defendant claims that the delay in seeking to amend could not have been avoided because it had no way of knowing that Plaintiff had breached its

---

[5] In various e-mails to CA, Gaugler represented that Atlantis was working on the latest enhancement of E/NAT (version 3.0) and stated that Atlantis was "making progress with E/NAT 3.0, but still not the exciting news you are waiting for." See Decl. of Pamela Miller, Ex. 5, Docket Entry #66. However, Gaugler's deposition revealed just the opposite when he admitted that all efforts to develop a new release of E/NAT were stopped by Atlantis "between 2002 or 2003" and Atlantis saw "no need to tell [CA]." Id., Ex. 11 at 93.

7

contractual obligation until Gaugler's January 2008 deposition, and that deposition gave rise to Defendant's proposed motion pending before this Court. (Def.'s Mem. in Supp. Mot. to Am. Answer at 8.) In opposition, Plaintiff maintains that the Court should deny Defendant's motion because (1) Defendant unduly delayed filing its motion, (2) Plaintiff would be prejudiced by the amendment, (3) Defendant's affirmative answer and counterclaim would be futile, and (4) Defendant did not demonstrate "good cause" as required by the Federal Rules of Civil Procedure. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Am. at 1-3.)

## DISCUSSION

### I. Standard of Review Under Rule 15

Rule 15(a) of the Federal Rules of Procedure ("FRCP") governs the amendment of pleadings before trial. Rule 15(a)(2) states that a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, leave to amend should be granted freely, and amendment is typically permitted. See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Although the decision to grant or deny a motion to amend rests within the sound discretion of the district court, there must be good reason to deny the motion. See Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995). In rendering its decision, the court should consider whether (1) the party seeking amendment unduly delayed or acted in bad faith, (2) the amendment

would be futile, or (3) the non-moving party would suffer unfair prejudice. Foman, 371 U.S. at 182.

Here, CA filed the present motion to amend approximately nine months after its deposition of Gaugler and approximately eleven months after the Court's December 31, 2007 deadline for amendments. In its motion to amend, however, the Defendant maintained that it did not unduly delay and that the motion, if granted, would not be prejudicial or futile.[6]

### A. Undue Delay Under Rule 15(a)

Generally, courts will grant leave to amend when the moving party shows that it has not unduly delayed in proposing the amendment, and provides a valid justification for any such delay. See Assam v. Deer Park Spring Water, Inc. 163 F.R.D 400, 406 (E.D.N.Y. 1995). With regard to its motion to amend, Defendant argues that there was no undue delay in this case because the facts supporting its defense of nonperformance and counterclaim for breach of contract were only learned during Gaugler's deposition on January 24, 2008, well after the Court's December 31, 2007 pleadings deadline.[7] Moreover, Defendant claims, any delay in filing its motion resulted from Gaugler's false, e-mail representations, which Defendant could not have discovered prior to

---

[6] Because the parties have not cited facts that could substantiate Defendant's bad faith, the Court finds that no bad faith exists.

[7] See supra, note 3.

9

Gaugler's testimony. At the time Defendant filed its Answer and its first motion to amend its Answer, it was not aware that Plaintiff had stopped all efforts to continuously enhance and update the E/NAT product as per the SLA. Finally, CA argues that its substitution of counsel, approximately four months after Gaugler's deposition, should also be an excuse for its delay.

Given the circumstances, Defendant maintains that there was no undue delay and argues that while delay "may be a factor to be considered" when determining whether to grant a motion for leave to amend a pleading under Rule 15, "unless the motion was either made in bad faith or will prejudice [the non-moving party], delay by itself is not enough to deny the requisite relief." (Def.'s Mem. in Supp. Mot. to Am. Answer at 6-7 (citing Middle Atl. Utils. v. S.M.W. Dev. Corp., 392 F.2d 380, 384 (2d Cir. 1968)).) In opposition, Plaintiff argues that CA's alleged breach of contract has been apparent to CA for nearly a decade. According to Plaintiff, because CA inquired about E/NAT upgrades periodically via e-mail[8] but allegedly never received them, it cannot contend that it did not know about Plaintiff's failure to perform under the SLA.

Courts have granted a Rule 15(a) motion where a lengthy period of time has elapsed between the initial filing of a pleading

---

[8] See Decl. of Pamela Miller, Ex. 3-10, Docket Entry #66. See also supra note 5.

10

and the motion for leave to amend where the moving party has learned of new evidence. See, e.g., Pesce v. Gen. Motors Corp., 939 F. Supp. 160, 166 (N.D.N.Y. 1996) (allowing plaintiff to amend complaint against car manufacturer after over a year so as to increase punitive damages from $10 million to $30 million based on new evidence); ResQNet.com, Inc. v. Lansa, Inc., 382 F. Supp. 2d 424, 450 (S.D.N.Y. 2005) (granting motion after a delay of nearly three years).  Here, CA filed the present motion to amend approximately nine months after its deposition of Gaugler and approximately eleven months after the Court's December 31, 2007 deadline for amendments.  Although the time between Defendant's filing of its original answer and the motion to amend is significant, it is no greater in the present case than in many cases in which amendments to the pleadings have been permitted. See Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (citing, for example, State Teachers Ret. Bd. v. Flour Corp., 654 F.2d 843, 845-46 (2d Cir. 1981) (permitting amendment after three-year interval); Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973) (allowing amendment after a five-year interval and on second day of trial); Middle Atl. Utils, 392 F.2d at 383 (three-year interval and notice of trial readiness); Zeigan v. Blue Cross & Blue Shield of Greater N.Y., 607 F. Supp. 1434, 1438-39 (S.D.N.Y. 1970) (three-year interval); Green v. Wolf Corp., 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (four-year interval)).

11

Furthermore, the parties in those cases were permitted to amend their pleadings to assert new claims long after they acquired the facts necessary to support those claims. See Richardson Greenshields Sec., 825 F.2d at 653 n.6 (citing, for example, Middle Atl. Utils., 392 F.2d at 385 (noting that plaintiff was aware of facts supporting new claims two years before filing of original complaint)); see generally Howey, 481 F.2d at 1191 ("the mere fact that the government could have moved at an earlier time to amend does not by itself constitute an adequate basis for denying leave to amend").

In the present case, even if Defendant could have discovered Plaintiff's failure to "continuously update and enhance" the E/NAT product prior to Gaugler's testimony and filed its motion to amend months earlier,[9] this would still not warrant the Court's finding of "undue delay" for purposes of Rule 15.

    B.    Unfair Prejudice to Atlantis

Plaintiff argues that it would be prejudiced if

---

[9] In particular, Plaintiff argues that CA, apart from what it already knew from its business dealings with Plaintiff, also confirmed through the written interrogatory the full picture of all the upgrades and enhancements to E/NAT. See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Leave to File an Am. Answer at 9-10. Thus, according to Plaintiff, if CA thought that Atlantis' failure to deliver a new version of E/NAT was untimely or otherwise breached the SLA, it had three months prior to the December 31, 2007 deadline for amended pleadings to add its affirmative defense or counterclaim against Plaintiff. Id. at 10. Even if the Court presumes that Atlantis' failure could have been discovered earlier, CA still would not have unduly delayed in seeking amendment.

12

Defendant's "last minute" motion was granted. First, Plaintiff contends that the present case has proceeded for more than two years as a breach of contract and royalty accounting dispute, and that Defendant's proposed amendments seek to embroil the parties in a new and complex dispute about whether Plaintiff's upgrades and enhancements to its E/NAT product were adequate. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Leave to File an Am. Answer 14). Second, Plaintiff maintains that since virtually all discovery in the case has been devoted to the royalty provisions of the SLA, as amended, and has resulted in over 70,000 pages of documents and ten witnesses' depositions, further discovery will fundamentally alter the contractual dispute at issue and delay the resolution of this case. Id. at 14-15. Third, Plaintiff argues that Defendant's instant motion will alter the course of the present lawsuit because it will require expert testimony directed to the question of what losses Defendant suffered as a result of Plaintiff's alleged breach of contract. Id. at 17.

Generally, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." United States v. Cont'l Ill. Nat'l Bank & Trust of Chi., 889 F.2d 1248, 1255 (2d Cir. 1989). However, a party's motion may be denied when the scope of additional discovery is significant. See Richardson Greenshields Sec., 825 F.2d at 653 n.6; Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760

13

F.2d 442, 446 (2d Cir. 1985); Barrows v. Forest Labs., Inc., 742 F.2d 54, 58 (2d Cir. 1984); Priestly v. Am. Airlines, Inc., No. 89-CV-8265, 1991 WL 64459, at *2 (S.D.N.Y. April 12, 1991). Here, Plaintiff maintains that the Defendant's motion, if granted, will "embroil the parties in a new and complex dispute." (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Leave to File an Am. Answer at 14). However, Defendant's motion to amend appears directly related to much of the discovery that has already transpired and arises out of the same body of facts. Both parties are claiming that each has breached a contractual duty. While Plaintiff seeks damages for breach of the SLA with regard to payment of royalties, Defendant seeks to show that Gaugler's testimony gives rise to a counterclaim and affirmative defense based on Atlantis' failure to continuously update and enhance the E/NAT product under that same SLA.

Defendant concedes that it will have to conduct additional discovery regarding software updates and enhancements, including expert testimony. However, this additional discovery does not rise to the level that would warrant denial of Defendant's motion under Rule 15(a). Plaintiff fails to recognize that Defendant's proposed affirmative answer of nonperformance and counterclaim for breach of contract are based on facts from Gaugler's testimony and documents that have already been produced. Where a "proposed amendment to its answer does not call for a new set of facts, but rather largely stems from the discovery that has

14

already occurred," a court may grant a motion to amend. Benoit v. Com. Cap. Corp., No. 03-CV-5328, 2008 WL 3911007, at *10 (S.D.N.Y. Aug. 25, 2008). Based upon the record, significant additional discovery is unlikely to be needed. See Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc., No. 01-CV-3796, 2005 WL 1765715, at *4 (S.D.N.Y. July 25, 2005) ("Courts determine whether prejudice would result from a proposed amendment by deciding whether the amendment would require significant additional resources to conduct discovery and prepare for trial or significantly delay resolution of the dispute."). Even if more discovery is needed to ascertain what constitutes an "update" of E/NAT or whether upgrades were delivered in a timely fashion, for example, it will not be unfairly prejudicial to Plaintiff.

    C.   CA's Amendment is not Futile

        1.   CA's Proposed Counterclaim

In its Opposition Memorandum, Plaintiff alleges that Defendant's counterclaim for breach of contract is futile because it is barred by the statute of limitations.[10] Defendant, on the other hand, asserts that its counterclaim is not futile and that the statute of limitations should be tolled in the present case due to Atlantis' admitted concealment of its breach of contract which Defendant had no way of discovering prior to its January 2008

---

[10] See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Leave to File an Am. Answer at 17-18.

deposition of Gaugler.

First, to satisfy the requirement that a proposed counterclaim or defense is not futile, a party must demonstrate that it is "colorable and not frivolous." Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works, 109 F.R.D. 627, 628 (S.D.N.Y. 1986). Courts have also found that futility is a "minimal standard to overcome--perhaps the lowest bar." Innomed Labs, LLC v. Alza Corp., No. 01-CV-8095, 2002 WL 1628943, at *2 (S.D.N.Y. July 23, 2002). CA's proposed counterclaim is neither futile nor frivolous and therefore survives.

Second, under New York law, the applicable limitations period for a breach of a computer software licensing agreement is four years pursuant to the Uniform Commercial Code section 2-725(1). See PC Com, Inc. v. Proteon, Inc., 946 F. Supp. 1125, 1130 n.7 (S.D.N.Y. 1996) ("Consistent with the majority rule, a contract for the development and sale of computer software is a contract for the sale of goods under the U.C.C."). Even if there is a service component to the license agreement such as the requirement to maintain and modify software--as is the case here--the four year limitations period still applies to any claim brought under such contract. See Richard A. Rosenblatt & Co. v. Davidge Data Sys. Corp., 295 A.D.2d 168, 168 (N.Y. 2002). However, under federal law, a statute of limitations does not run against a party who is unaware of his or her cause of action because of efforts to conceal

16

that cause of action. See Cerbone v. Int'l Ladies Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985); Keating v. Carey, 706 F.2d 377, 382 (2d Cir. 1983).

In the present case, the statute of limitations should be equitably tolled because Defendant had no way of knowing that Plaintiff stopped all efforts to enhance and update the E/NAT product under the SLA. Not only could Defendant not have discovered Plaintiff's concealment during the course of the parties' contractual relationship, but it was consistency reassured by Atlantis, by virtue of Gaugler's e-mail communications, that the latest version of the E/NAT product was being developed. Although Atlantis' breach of the SLA occurred in 2002 or 2003, Defendant could not have become aware of that breach until January 2008, when Gaugler testified under oath that all efforts to develop a new version of E/NAT were halted.[11] Thus, the statute of limitations would not bar Defendant's claim.

### 2. CA's Proposed Affirmative Defense

Plaintiff further claims that Defendant's affirmative defense of nonperformance is equally futile because it does not state a proper defense to Plaintiff's affirmative claims for breach of contract. According to Plaintiff, even if Atlantis breached its obligation to CA to provide updates of the E/NAT product, CA would still not be excused from paying royalties. Contrary to these

---

[11] See supra note 3.

assertions, CA does not seek to completely terminate the agreement or avoid payment. The crux of CA'S amendment, it seems, is that it is entitled to an offset of any damages Atlantis might otherwise recover. Thus, Plaintiff's argument on this point also fails.

II. <u>Good Cause under Rule 16(b)</u>

FRCP 16(b)(4) states that "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Courts have granted motions to amend pleadings after the scheduled deadline for doing so has passed where parties have shown good cause. <u>See</u>, <u>e.g.</u>, <u>Hogan v. J.P. Morgan Chase Bank</u>, No. 05-CV-5342, 2008 WL 4185875, at *2 (E.D.N.Y. Sept. 4, 2008); <u>Travelers Indem. Co. of Conn. v. Losco Group, Inc.</u>, 150 F. Supp. 2d 556, 561-63 (S.D.N.Y. 2001). Good cause may be shown by demonstrating that despite the diligence of the moving party, the deadline for making the motion for leave to amend the pleading could not be reasonably met. <u>Rococo Assocs. v. Award Packaging Corp.</u>, No. 06-CV-0975, 2007 U.S. Dist. LEXIS 49642, at *7 (E.D.N.Y. July 9, 2007) (citing <u>Grochowski v. Phoenix Constr.</u>, 318 F.2d 80, 86 (2d. Cir 2003); <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 340 (2d Cir. 2000)). "The Court must also examine whether [a party] had notice of, or was diligent in discovering, the alleged new facts." <u>Rococo Assocs.</u>, U.S. Dist. LEXIS 49642, at *8 (citing <u>Parker</u>, 204 F.3d at 340). Here, good cause exists to grant Defendant's motion, because the key facts underlying the proposed counterclaim and affirmative

18

defense were not discovered until after the deadline to amend the pleadings, and because the Plaintiff may have taken affirmative steps to conceal those facts.[12] Gaugler's January 2008 testimony revealed that Atlantis had stopped all efforts to upgrade E/NAT. His repeated, prior communications with CA employees represented otherwise.[13] Contrary to Plaintiff's arguments, CA had no reason to believe that Atlantis was deliberately concealing this fact until Gaugler's deposition. Based on these circumstances, CA has shown good cause under Rule 16. Thus, it should be afforded the opportunity to file an Amended Answer to assert an affirmative defense and a counterclaim against Plaintiff.

## CONCLUSION

For the reasons stated herein, the Court GRANTS Defendant's motion to amend its Answer pursuant to Rule 15(a).

SO ORDERED

/s/ JOANNA SEYBERT  
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York  
July  6 , 2009

---

[12] See supra note 5.

[13] Id.