# Cowan, Liebowitz & Latman, P.C.

LAW OFFICES

1133 Avenue of the Americas   •   New York, NY  10036-6799

(212) 790-9200   •   www.cll.com   •   *Fax* (212) 575-0671

**J. Christopher Jensen**
Direct  (212) 790-9204
jcj@cll.com

July 22, 2010

<u>**Via ECF**</u>

Hon. Joanna Seybert
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722-9014

Re:   *Atlantis Information Technology, GmbH v. CA, Inc.*,
No. 06 Civ. 3921 (JS) (WDW)

Dear Judge Seybert:

We represent the plaintiff Atlantis Information Technology, GmbH ("Atlantis") in the above-referenced matter.  We write pursuant to your Honor's Individual Practices to request a pre-motion conference on Atlantis' proposed motions for (a) partial summary judgment on liability on its claim for breach of contract and (b) summary judgment dismissing defendant CA's affirmative defense and counterclaim for breach of contract.

Because plaintiff's claims and defendant's counterclaim involve somewhat distinct legal and factual issues, we propose to file these two motions separately.  We are enclosing copies of Plaintiff's Rule 56.1 Statements in support of our two proposed motions and copies of the Defendant's Rule 56.1 Statements in opposition to the proposed motions.  Defendant has either admitted or, by its non-responsive denials, have failed to deny the material facts that support our motions.  In order to avoid a direct response to plaintiff's statements, defendant has even resorted to the pretext that it could not admit or deny factual statements that are obviously within its knowledge because plaintiff did not submit the declaration of its client even though the Court's rules do not require such a submission at this time.  Nonetheless, we believe both issues are appropriate for summary judgment for the reasons discussed below.

As the Court is aware from prior proceedings, Atlantis and CA entered into a software license agreement in 1997 whereby Atlantis licensed to CA the right to sell and sublicense

**Cowan, Liebowitz & Latman, P.C.**
Hon. Judge Seybert
July 22, 2010
Page 2

Atlantis' E/NAT software program.  Atlantis has alleged that CA breached that agreement by failing to pay royalties in accordance with the terms of the second and third amendments to that agreement ( the "Second Amendment" and "Third Amendment").

Now that all discovery has been completed, Atlantis proposes to move for partial summary judgment on the issue of CA's liability for this breach of contract leaving the determination of damages for trial.  The royalty provisions of these agreements are unambiguous and there is no dispute as to the manner in which CA actually calculated and paid royalties to Atlantis.

CA has contended in its pretrial discovery responses, deposition testimony, and expert reports that the amount of royalties sought by Atlantis is excessive and has proposed various methods for how the royalties should have been calculated.  CA does not claim, however, and cannot seriously claim that CA paid royalties in accordance with the literal terms of the parties' agreements.  Therefore, Atlantis is entitled to partial summary judgment on its claim for breach of contract and the matter should proceed to trial on the issue of Atlantis' damages.

In brief, the Second and Third Amendments provide that Atlantis is to be paid a royalty of 34% of CA's "G1 list price" for each copy of E/NAT licensed to CA's customers for an initial period of 1 year.  If CA's customer continued to use the software, Atlantis was entitled a royalty for the continued license or maintenance of E/NAT based either on a percentage of the maintenance revenues (under the Second Amendment to the software license) or a percentage of the G1 List price (under the Third Amendment to the agreement).  CA was granted the right by the Second and Third Amendments to discount its price to CA's customers, but was obligated to pay royalties to Atlantis based on this list price regardless of any discounting.

There is no dispute that CA did not pay Atlantis 34% of the G1 list price for each copy of E/NAT that was licensed or authorized to be used on the customers' CPUs.  During the period that the Second Amendment was in effect, CA reported and paid a royalty based on the G1 list price for a single CPU for each customer regardless of how many of the customer's CPUs were licensed to use the software.

After the execution of the Third Amendment, Atlantis discovered for the first time that it was not being paid on the G1 list price for each CPU and complained to CA.  With a few exceptions, CA began paying Atlantis a royalty based upon an allocation of the total computer processing capacity licensed to its customer expressed in millions of instructions per second or MIPS.  CA determined an allocated amount of MIPS for E/NAT by based on the percentage of the G1 list price of E/NAT compared to the G1 list prices of all of the software that CA had licensed to the customer.  Thus, the amount of the royalties that CA began paying to Atlantis arbitrarily depended upon the amount of other software that it had sold to a customer.

The Court can determine, as a matter of law, that the undisputed methods used by CA to calculate and pay royalties to Atlantis were not consistent with the unambiguous terms of the parties' software license agreement and the Second and Third Amendments.

**Cowan, Liebowitz & Latman, P.C.**
Hon. Judge Seybert
July 22, 2010
Page 3

CA may assert that a portion of Atlantis' claimed damages under the Second Amendment is subject to a Settlement Agreement and Release signed by the parties in December 2004. However, there is an express exception to Atlantis' release for any previously unreported "licensees and/or installations" of E/NAT. CA now admits that there were at least six licensees who were never previously disclosed to Atlantis and any issues regarding the applicability of this release to other licensees can be resolved at trial in connection with the jury's determination of the proper amount of royalties due to Atlantis. The sole question presented by this motion is whether CA breached the software license agreement by not paying Atlantis based on the G1 list price for each one of the CPUs on which the CA customers were licensed to install or use a copy of E/NAT.

Atlantis's other motion will seek summary judgment dismissing CA's affirmative defense and counterclaim that Atlantis breached paragraph 2.4 of the software license agreement by not providing updates or new versions of its E/NAT program to CA. Although Atlantis vigorously disputes that it failed to provide the contractually required updates of E/NAT, the undisputed facts are that CA never asserted any breach of contract for these alleged failures at any time during the 10 years that it licensed E/NAT for many millions of dollars to its customers. CA now improperly seeks the restitution of all of the royalties that CA has paid to Atlantis since 2003 or 2004 upon its speculative assertion that CA might have terminated its license with Atlantis at that time had it known that Atlantis allegedly was not intending to provide a new version of E/NAT. In short, CA incrediously proffers that it was entitled to a royalty free license to exploit E/NAT as of 2003 or 2004, a position wholly contrary to law and utterly absurd. Moreover, CA's proposed calculation of damages directly contradicts its prior representations to this Court that it would only seek "expectancy" damages. Thus, CA has asserted no legally cognizable claim for actual damages.

CA's counterclaim is also barred, as a matter of law, by the doctrine of waiver, by the 4 year statute of limitations applicable to this claim and by the general release that CA gave to Atlantis in December 2004 of all claims "known or unknown" that it might have against Atlantis.

Based on the foregoing, we respectfully request a pre-motion conference to set a summary judgment briefing schedule.

Respectfully submitted,


s/ J. Christopher Jensen


Enclosures